NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GARY VON RUDENBORG<br><br>         Plaintiff,<br><br>   v.<br><br>DI GIORGIO CORPORATION and JOSEPH FANTOZZI<br><br>         Defendants. | Civ. Action No. 08-5791 (KSH)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

In April 2007, defendant White Rose Inc. ("White Rose"), formerly known as DiGiorgio Corporation, terminated plaintiff Gary Von Rudenborg, who had worked there since 1976. On November 24, 2009, he filed a complaint against White Rose and its president and Chief Operating Officer, Joseph Fantozzi ("Fantozzi"). Plaintiff's second amended complaint alleges: (1) that he was terminated as a result of retaliation for his participation in another employee's suit against White Rose, contrary to 42 U.S.C. § 2000e-3(a); and (2) that he was discharged at age 55 as a result of age discrimination, contrary to the Age Discrimination in Employment Act, 29 U.S.C. § 623, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12. Defendants have moved for summary judgment.

**II. Facts**

1

The facts are drawn from the parties' statements of undisputed facts, plaintiff's deposition testimony, and uncontested documents submitted to the record.

In 1976, White Rose hired plaintiff as a "hilo" operator in its dairy division. (Defs.' Stmt. Undisputed Facts ¶ 4.) At the time, he was in his early twenties. (*Id.* ¶ 5.) He later served as a truck driver before being promoted to supervisor on the second shift, assistant manager on the first shift, and manager on the first shift. (*Id.* ¶ 6–7.) In 1997, plaintiff was demoted to the position of supervisor. (*Id.* ¶ 8.)

In 1998, a former White Rose employee, John Miele, and his wife filed a claim against the company in state court alleging intentional infliction of emotional distress and loss of consortium. (*Id.* ¶ 14.) In 2000, plaintiff testified in a deposition in that case. (*Id.* ¶ 16.) Plaintiff asserts that his testimony was supportive of Miele's claims and that Miele later told him that the deposition helped advance the settlement of the case. (*Id.* ¶ 17; Boshak Cert., Ex. C, Pl.'s Dep. 129:7–11; Compl. ¶ 7.) Plaintiff could not recall any instance of a White Rose employee commenting on the fact that he gave this deposition. (Defs.' Stmt. Undisputed Facts ¶ 19.)

After his demotion to supervisor, plaintiff earned periodic pay increases, and in 2003 he was promoted to assistant shift manager. (*Id.* ¶ 9–10.) In 2005, he was promoted back to his former position of first shift manager. (*Id.* ¶ 11.) In March 2007, plaintiff requested and was granted a transfer to the second shift. (*Id.* ¶ 12.)

On April 27, 2007, White Rose discharged plaintiff from employment. (*Id.*) White Rose provides three reasons for this decision, all of which are discussed in a memorandum that plaintiff's supervisor, Mike Cargill, drafted on the day of the firing. (Simmons Cert., Ex. A.)

The first reason for plaintiff's discharge is that in 2004, White Rose began using a computer management system to track its merchandise. (Defs.' Stmt. Undisputed Facts ¶ 20.) Plaintiff was aware that when he transferred to the second shift in 2007, he would need to become more knowledgeable about the company's computer systems. (*Id.* ¶ 29; Boshak Cert., Ex. C., Pl.'s Dep. 73:19–74:5.) Despite receiving a memorandum on the matter, plaintiff could not recall in his deposition whether he reached out to the appropriate training contact. (Defs.' Stmt. Undisputed Facts ¶ 23; Boshak Cert., Ex. C., Pl.'s Dep. 77:4–22.) He knew of other employees capable of guiding him on using the computer, but he could not recall in his deposition whether he asked any of them for help. (Defs.' Stmt. Undisputed Facts ¶¶ 30, 32; Boshak Cert., Ex. C., Pl.'s Dep. 77:18–19.) Plaintiff asked Cargill to arrange training for him, but Cargill "always offered an excuse" and "never sent [him] to learn the proper way" to use the computers. (Pl.'s Cert. ¶ 4; Boshak Cert., Ex. C., Pl.'s Dep. 74:6–11.) Plaintiff concedes that the lack of training hampered his ability to fulfill his job requirements. (Pl.'s Cert. ¶ 4; Boshak Cert., Ex. C., Pl.'s Dep. 74:25–76:4.) In April 2007, a shift manager informed Cargill that plaintiff was not "picking up the required responsibilities of his job as loading dock supervisor since his return to the second shift." (Simmons Cert., Ex. A.)

Second, in a conversation with Cargill, plaintiff referred to supervisor Denise Jarosz as "princess" because he felt that she was given special treatment, especially following an incident in which management assigned her a better parking spot than plaintiff felt her seniority warranted. (Defs.' Stmt. Undisputed Facts ¶ 44; Pl.'s Counterstmt. Undisputed Facts ¶ 10; Pl.'s Cert. ¶ 12.) After Cargill told plaintiff he was being fired, plaintiff used a particularly derogative expletive (often referred to as "the C-word") to refer to Jarosz. (Pl.'s Cert. ¶ 12; Boshak Cert., Ex. C, Pl.'s Dep. 95:8–96:3.) Plaintiff admitted in his deposition that he referred to Jarosz by

3

that term in the meeting in which he was fired; he could not recall whether he used it when referring to her at any time prior. (Boshak Cert., Ex. C, Pl.'s Dep. 96:8–11.) All of these references occurred outside of Jarosz's presence. (Pl.'s Cert. ¶ 12.)

Third, plaintiff met in the ordinary course of business with Alice Pick, a clerk whom plaintiff believed to be eligible for full pension and social security benefits. (Pl.'s Cert., ¶ 11.) He asked when she planned to retire and she stated that she could not retire because she "needed medical." (Boshak Cert., Ex. C, Pl.'s Dep. 98:6–12.) He responded, "[I]f I was you, I would retire tomorrow the way this company was going." (*Id.*) The Vice President of Human Resources at White Rose stated in a certification that Pick complained to her that plaintiff "was trying to convince her to retire." (Simmons Cert. ¶¶ 1, 10.) Although Pick never complained to plaintiff about the remark, she complained to Human Resources. (Pl.'s Cert. ¶ 11; Simmons Cert. ¶ 10.) In Cargill's memorandum to Human Resources following plaintiff's termination, he questioned whether plaintiff may have been attempting to convince Pick to retire so that he could replace her with a different clerk who could improve performance. (Simmons Cert., Ex. A.)

## III. Discussion and Analysis

### A. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" through citations to the record "including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." *Fed. R. Civ. P.* 56(c)(1). The moving party "bears the initial

4

responsibility of informing the district court of the basis for its motion" and identifying the significant aspects of the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The opposing party may either submit supplemental materials to the record or rely "solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* When deciding a motion for summary judgment, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" if there is not sufficient evidence for a jury to reasonably find in his favor. *Id.*

### B. Retaliation

Plaintiff first contends that he was terminated in retaliation for his participation in the Mieles' litigation against White Rose. The Civil Rights Act of 1964 provides that it is unlawful "for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To set forth a prima facie case of discriminatory retaliation, plaintiff "must show 1) that [he] engaged in protected activity, 2) that the employer took adverse action against [him], and 3) that a causal link exists between the protected activity and the employer's adverse action." *Kachmar v. Sungard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997); *see also Moore v. City of Phila.*, 461 F.3d 331, 340–41 (3d Cir. 2006) (same).

Here, plaintiff's claim fails because he is not a member of the protected class. The statute protects only those who are the subject to retaliation for opposing a practice made unlawful "by

5

this subchapter" or for participating "in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 59 (2006) ("Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" (quoting 42 U.S.C. § 2000e-3(a))). Plaintiff participated via deposition in Mr. and Mrs. Miele's litigation against White Rose, but that case alleged only intentional infliction of emotional distress and loss of consortium. (Boshak Cert., Ex. F.) Even assuming that plaintiff was the victim of retaliation for his participation in the Mieles' case, he cannot prevail in his retaliation claim because the prior litigation did not arise under Title VII.

Moreover, even absent this legal barrier, the record does not support plaintiff's allegation that he was the victim of retaliation. Plaintiff continued to work for White Rose for seven years after he provided his deposition in Miele's case; during that time, he received two promotions and cannot recall ever hearing a White Rose employee comment on his participation. In short, plaintiff demonstrates no causal nexus between his deposition and his termination seven years later.

### C. Age Discrimination

Plaintiff next asserts that his discharge was the result of age discrimination, contrary to the Age Discrimination in Employment Act, 29 U.S.C. § 623, and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12. Both statutes utilize the same framework for assessing an age discrimination claim based on circumstantial evidence. *See Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 300–01 (3d Cir.), *cert. denied*, 543 U.S. 814 (2004); *Bergen Commercial Bank v. Sisler*, 157 N.J. 188, 209–10 (1999). Under that framework, a variation of the test set forth in

*McDonnell-Douglas v. Green*, 411 U.S. 792, 802–03 (1973), a plaintiff must first establish a prima facie case by showing "that he or she: (1) was a member of the protected class . . ., (2) was qualified for the position, (3) suffered an adverse employment decision, and (4) ultimately was replaced by a person sufficiently younger to permit an inference of age discrimination." *Monaco*, 359 F.3d at 300–01; *see also Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009); *Sisler*, 157 N.J. at 210.  If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to present evidence of "a legitimate, non-discriminatory reason" for the action.  *Smith*, 589 F.3d at 690; *Sisler*, 157 N.J. at 210–11.  If the defendant meets that burden, it shifts back to the plaintiff "to demonstrate that the employer's proffered rationale was a pretext for age discrimination."  *Smith*, 589 F.3d at 690; *see Sisler*, 157 N.J. at 211.

      For purposes of summary judgment, plaintiff easily satisfies the first three elements of his prima facie case.  First, plaintiff was fifty-five years old when fired, thus placing him within a protected class under both the ADEA and NJLAD.  *See* 29 U.S.C. § 631(a) (ADEA protected class includes individuals over 40); N.J.S.A. 10:5-2.1 (NJLAD protected class includes individuals over 18).  Second, plaintiff's qualifications for the position were drawn into question due to his lack of computer training, but at this juncture his overall skills are a disputed issue of fact that must be decided in favor of plaintiff as the non-moving party.  *See Hollinger v. Wagner Mining Equip. Co.*, 667 F.2d 402, 405 (3d Cir. 1981).  Third, plaintiff's termination was an adverse employment action.

      On the fourth element, the parties are not in full agreement regarding the proper inquiry.  They agree that the ADEA requires plaintiff to have been "ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith*, 589 F.3d at 689–90 (citing *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d

7

Cir. 2004)). They disagree as to whether the NJLAD contains the same requirement or whether plaintiff must merely show that he was replaced. (Pl.'s Br. Opp'n Summ. J. 4.) Plaintiff cites *Wright v. L-3 Communications Corp.*, 227 F. Supp. 2d 293, 299 (D.N.J. 2002) and *Petrusky v. Maxfli Dunlop Sports Corp.*, 342 N.J. Super. 77, 81–82 (App. Div. 2001) for the proposition that NJLAD requires only a showing that the employer replaced the employee after his discharge; those courts reasoned that because NJLAD does not impose a floor on plaintiffs' age and allows actions for discrimination due to youth, the "sufficiently younger" standard makes little sense. But the Third Circuit expressly rejected this argument in *Monaco*, holding that "we should apply the same standard for the fourth element of [plaintiff's] prima facie case under the NJLAD as we would have applied under the ADEA if he had brought this case under that statute." 359 F.3d at 301–04.

*Monaco* involved a reduction in workforce, not a termination due to performance or disciplinary issues. *Id.* at 298; *see also Arenas v. L'Oreal USA Prods., Inc.*, No. 10-0808, 2011 U.S. Dist. LEXIS 51496, at *13–18 (D.N.J. May 13, 2011) (holding that *Monaco* applies only to workforce reductions, not performance-related firings). But *Monaco*'s reasoning did not hinge on that distinction. Instead, the Third Circuit read *Sisler*, 157 N.J. 188, and concluded that in that decision, the Supreme Court of New Jersey merely sought to clarify "that in a traditional case the replacement employee must be sufficiently younger than the replaced employee and in a *Sisler* reverse discrimination situation the replacement employee must be sufficiently older than the replaced employee." 359 F.3d at 303. In other words, the NJLAD formulation of the *McDonnell Douglas* test differs from the ADEA formulation only when dealing with a "reverse-discrimination" case that would not be cognizable under the ADEA. *See Gen. Dynamics Land.*

8

*Sys., Inc. v. Cline*, 540 U.S. 581, 600 (2004) (ADEA does not prevent employer from favoring older workers over younger workers).

No bright-line test exists to determine of whether the replacement worker is "sufficiently younger" and "there is no particular age difference that must be shown." *Monaco*, 359 F.3d at 307 (quoting *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999)). A one-year age difference is typically insufficient. *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1087 (3d Cir. 1992). A five-year difference, on the other hand, "can be sufficient." *Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir. 1995) (citing *Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981)). As one court in this circuit has observed, "[a]lthough no uniform rule exists, it is generally accepted that when the difference in age between the fired employee and his or her replacement is fewer than five or six years, the replacement is not considered 'sufficiently younger,' and thus no prima facie case is made." *Gutknecht v. SmithKline Beecham Clinical Labs., Inc.*, 950 F. Supp. 667, 672 (E.D. Pa. 1996) (citations omitted). Here, plaintiff was fifty-five years old when terminated, and his replacement was fifty-two years old. (Undisputed Facts ¶¶ 49, 51.) Under the circumstances, this Court cannot find as a matter of law that a three-year age gap is insufficient to serve as the premise for an inference of age discrimination. With all four elements met, plaintiff has established his prima facie case.

Notwithstanding the establishment of plaintiff's prima facie case, his claim fails under the second and third elements of *McDonnell Douglas*. As discussed above, White Rose has put forth three legitimate, non-discriminatory reasons for plaintiff's discharge: his failure to learn the new computer system and the resulting productivity issues, his derogatory comments regarding Jarosz, and Pick's complaint that she believed plaintiff was pressuring her to retire. These matters cumulatively constitute a legitimate, non-discriminatory justification for White Rose's

9

decision to terminate plaintiff's employment.  Plaintiff's failure to learn the computer system is especially notable, as the record indicates that he chose not to avail himself of recommended avenues for doing so.

      The burden now shifts back to plaintiff to demonstrate that White Rose's legitimate, non-discriminatory justification is mere pretext.  "Pretext may be shown by exposing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'"  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 306 (3d Cir. 2007) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 504 (3d Cir. 1997)).  Plaintiff argues that the proffered reasons for his termination are pretextual because: Cargill had recently given him positive evaluations; he received no contemporaneous reprimand after making the disparaging remarks about Jarosz; and no evidence exists that Pick actually complained about his comments to her.  He also suggests that White Rose has a history of firing older managers for questionable reasons.

      Plaintiff's suggestions that the justifications were exaggerated or fabricated are rebutted by Cargill's memorandum, which he drafted contemporaneous with plaintiff's firing and which demonstrates that these issues were genuinely on management's radar before the onset of litigation.  Moreover, the same memorandum demonstrates that plaintiff's productivity problems were brought to management's attention only after a shift manager noticed a drop-off in plaintiff's output, thus explaining the prior evaluations.  Plaintiff conceded in his deposition that he was "having problems with the computer," that he did not "ask Denise for help as it [said] on the memo," that he could not recall if he "ask[ed] anyone for help," and that Cargill "constantly"

spoke to him about "a problem with [his] computer skills. (Boshak Cert., Ex. C., Pl.'s Dep. 77:6–11, 75: 5–8, 77:15–19.)

As to the five older workers who were fired over the years, plaintiff admits that each of those firings was for cause, but he contends that White Rose's reasons were pretext for age discrimination. For example, one employee was fired for stealing, but plaintiff notes that it was "based on a very ambiguous security video." (Pl.'s Cert. ¶ 14(e).) Another employee was fired after telling an "inappropriate joke," but only because "he was overheard by someone who reported him." (Pl.'s Cert. ¶ 14(d).) Plaintiff's personal disagreement with White Rose's decisions falls well short of demonstrating age discrimination as the true explanation for the firings. Plaintiff has only provided a list of older employees who have been terminated, without any perspective on the broader context of the company's treatment of older employees as a class. The attempt to imply animus through a pattern-or-practice approach fails because plaintiff has shown, at most, "the mere occurrence of isolated 'accidental' or sporadic discriminatory acts," and not evidence that "discrimination was the company's standard operating procedure." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977).

Other evidence in the record further undercuts plaintiff's claim of pretext. For example, as discussed above, plaintiff's replacement was only three years younger than he was. Cargill, who made the decision to terminate plaintiff, was only two years younger.

In sum, plaintiff has failed to put forth sufficient evidence for a reasonable jury to find that his termination was a result of age discrimination rather than the company's proffered explanation. Accordingly, White Rose's motion for summary judgment against plaintiff's ADEA and NJLAD claims is granted.

    **D. Individual Claim Against Fantozzi**

11

Plaintiff named Fantozzi, the President and Chief Operating Officer of White Rose, as an individual defendant, but does not specify why. Fantozzi argues that he cannot be held individually liable under Title VII, the ADEA, or NJLAD under these circumstances. Because this Court has determined that plaintiff's claims for retaliation and age discrimination fail on the merits, there is no need to address whether Fantozzi can be held individually liable for any role he might have played in plaintiff's firing, and the claims against him are dismissed.

## IV. Conclusion

Defendants' motion for summary judgment on all counts is granted. An appropriate order will be entered.

/s/ Katharine S. Hayden

September 30, 2011                                    Katharine S. Hayden, U.S.D.J.